UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
————————————

MICHAEL J. WAPPLER,

        Plaintiff,

                                 Case No. 4:05-CV-90

v.

                                 Hon. Paul L. Maloney

MATTHEW J. BREVARD, *et al.*,

        Defendants.

                                 **OPINION**

_____/

      This matter is before the Court on the Objections of Plaintiff Michael J. Wappler and Defendant Karen Tucker to the September 24, 2007 Report and Recommendation of United States Magistrate Judge Ellen S. Carmody. Magistrate Judge Carmody has recommended that Defendants Matthew J. Brevard, Randy Mikkelsen and Karen Tucker's Motion for Summary Judgment be granted in part and denied in part and Plaintiff's Motion to Hold Dispositive Motion in Abeyance and Motion that Defendants Produce Complete Copies of Deposition Transcripts be denied. If accepted, the recommendations would have the effect of dismissing all claims against Defendants except for the claims against Defendant Karen Tucker involving the reading of several items of incoming confidential legal mail from Plaintiff's attorneys (correspondence of January 23, 2003 and February 21, 2003, and other correspondence listed as Plaintiff's exhibits F-1, F-2, F-5, F-6, F-8 to F-12, F-14 to F-16, and F-20 to F-24). The parties' Objections and pertinent portions of the record are now reviewed *de novo* in accordance with 28 U.S.C. § 636(b)(1)(B)-(C).

**PROCEDURAL BACKGROUND**

      This suit was filed on or about August 10, 2005 by Plaintiff Michael J. Wappler, a prisoner seeking relief under 42 U.S.C. § 1983 for prison conditions involving the Muskegon Correctional

Facility ("MCF").[1]  The suit, in its various formats, has involved over 20 prison employees and officials named as Defendants.  Most of those Defendants were terminated upon the Court's initial review of the Complaint on October 19, 2005.

This initial review did not dismiss claims against Defendants Matthew Brevard, M.A. Hocking, Dale Hurlbert, Randy Mikkelsen and Karen Tucker.  Plaintiff amended his claims against these Defendants by his filing of November 21, 2005.  (*See* Am. Compl. 39.)  A Second Amended Complaint was allowed after receipt of a Motion for Leave to File Second Amended Complaint dated January 11, 2006.[2]  A Second-Amended Verified Complaint was also allowed after receipt of a Motion for Leave to File dated April 19, 2006.[3]  Claims against Defendants Hocking and Hurlbert were dismissed by the Court's Order of September 20, 2007 in the absence of objections to the August 8, 2007 Report and Recommendation, recommending their dismissal.  Since September 20, 2007, the only remaining claims have involved Defendants Brevard, Mikkelsen and Tucker.  Those claims are summarized below based on the factual record supporting those claims.  The supporting record includes not only the verified allegations by Plaintiff, but also the supporting affidavits he has filed in connection with the summary judgment record.

---

[1]This is date of the Complaint, and presumably the date the Complaint was given to prison officials for mailing.  (*See* Compl. 87.)  The date that the Complaint was given to prison authorities for mailing counts as the mailing date under the United States Supreme Court's decision in *Houston v. Lack,* 487 U.S. 266, 270-71 (1988).  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (using date that prisoner section 1983 complaint was signed as filing date).

[2]This is the date of the motion and presumptive date of mailing, though the motion was not approved until March 10, 2006 at which time the Second Amended Complaint was filed by the Clerk.  (*See* Dkt. No. 38.)

[3]This is the date of the motion and presumptive date of mailing, though the motion was not approved until June 12, 2006 at which time the Second-Amended Verified Complaint was filed by the Clerk.  (*See* Dkt. No. 89.)

In connection with the remaining claims Defendants Brevard, Mikkelsen and Tucker filed their summary judgment motion on April 13, 2007.  Plaintiff's Motion to Hold Dispositive Motion in Abeyance is dated May 3, 2007 and was received by the Clerk on May 8, 2007.  Plaintiff's Motion that Defendants Produce Complete Copies of Deposition Transcripts is dated June 29, 2007 and was received by the Clerk on July 3, 2007.  Magistrate Judge Carmody, upon review of these Motions, has recommended that Plaintiff's Motions be denied and Defendants' Motion for Summary Judgment be granted except for the retained incoming attorney mail claims against Defendant Tucker.

Plaintiff has filed two lengthy Objections in opposition to the Report and Recommendation of September 24, 2007.  Defendant Tucker has also filed Objections requesting complete dismissal of the allegations against her based on qualified immunity.  (Def. Tucker's Objs. 4-5.)

## FACTUAL BACKGROUND

This factual background is interpreted in a light most favorable to Plaintiff.  The background arises from the policy decisions of the Michigan Department of Corrections ("MDOC") regarding prisoner mail.  Since the Sixth Circuit Court of Appeals' decision in *Muhammad v. Pitcher*, 35 F.3d 1081 (1984), it has been the law of this Circuit that prisoners who so request have a right to be present when confidential legal mail from the prisoner's attorney is opened by prison authorities to inspect for contraband.  Nonetheless, MDOC, between May 1, 2002 and December 19, 2003, maintained as its policy that it would search prisoner legal mail outside the prisoner's presence notwithstanding any written requests by a prisoner to be present.  (*See* Report & Recommendation ("R & R") at 18-19.)

Plaintiff was first transferred to MCF on April 11, 2002.  (2d Am. Ver. Compl. at ¶ 45.)  He

3

transferred out of the facility on January 6, 2004.  (Def.s' Reply 1.)  While there, he requested of the mail room supervisor that his legal mail be opened only in his presence and Karen Tucker responded that he was already on the list for special mail handling.  (*See* Pl.'s Aff. & Partial Answer in Opp'n to K. Tucker's Mot. for Summ. J., at 20 & Ex. D.)  Thereafter, when he filed an inmate grievance involving Karen Tucker's conduct in opening his legal mail outside his presence, the grievance was rejected as inconsistent with MDOC policy.  (*See* Pl.'s Aff. & Partial Answer in Opp'n to K. Tucker's Mot. for Summ. J., at 20 & Ex. E.)  Plaintiff has also filed evidence suggesting that numerous attorney letters were opened outside his presence while he was housed at MCF.  (*See* Pl.'s Aff. & Partial Answer in Opp'n to K. Tucker's Mot. for Summ. J., at 20 & Exs. F-1, F-2, F-5, F-6, F-8 to F-12, F-14 to F-16, and F-20 to F-24.)

Plaintiff sought in discovery a complete mail log listing all rejected legal correspondence during his stay at MCF.  Although staff was required to keep and maintain the log, Defendant Tucker has answered the discovery request by indicating that the log was lost and attempts to locate the log at a storage site have been unsuccessful.  (*See* Pl.'s Aff. & Partial Answer in Opp'n to K. Tucker's Mot. for Summ. J., at 20 & Ex. C--"Responses" (g)-(i).)  This failure to provide the mail log has resulted in Plaintiff's inability to specify further violations by staff which might be revealed by the logs.  (*See* R & R 20.)  Plaintiff alleges in general terms that MDOC officials opened his legal mail outside his presence on some 50 or more occasions.  (2d Am. Ver. Compl.  ¶ 43.)  Plaintiff alleges that on some occasions he learned of this opening of his mail by virtue of the disclosure of the confidential information to the Michigan Attorney General, who then sought to use it against him in other litigation. (*Id.* at ¶¶ 132-34.)

Aside from Plaintiff's legal claims about the incoming legal mail, the Court adopts by

4

reference the Magistrate Judge's discussion of Plaintiff's other legal claims involving his rejected *Maxim* magazines, conspiracy, denial of the First Amendment, retaliation, and violation of the Equal Protection Clause.  (*See* R & R 3-14.)

## STANDARDS FOR SUMMARY JUDGMENT

Defendants' Motion for Summary Judgment is brought pursuant to Federal Rule of Civil Procedure 56.  Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 323.

While this analysis assumes the adequacy of discovery, a party cannot oppose summary judgment based on vague generalizations that discovery has been inadequate.  Rather, under the language of Rule 56 and the case law of this Circuit, a party urging that discovery has been insufficient must file a specific affidavit establishing that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition."  Fed. R. Civ. P. 56(f); *Klepper v. First Am. Bank*, 916 F.2d 337, 343 (6th Cir. 1990); *Plott v. General Motors Corp., Packard Elec. Div.*,

71 F.3d 1190, 1196 (6th Cir. 1995).

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994).  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255).  The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## LEGAL ANALYSIS

### A.  Defendant Tucker's Objections

### 1.  Qualified Immunity

This Court begins with Defendant Tucker's Objections to the Report and Recommendation. Defendant Tucker has objected to the disposition on the ground that it was not clearly established in 2003 that her conduct in opening legal mail violated the Constitution (First Amendment) and, therefore, she is entitled to qualified immunity.

Qualified immunity asks the basic question of whether the law was clearly established at the time of the alleged violation.  Qualified immunity is a pure legal defense, which is to be determined as a matter of law prior to submission to a jury. *Sallier v. Brooks*, 343 F.3d 868, 878 (6th Cir. 2003) (citing *Donta v. Hooper*, 774 F.2d 716, 719 (6th Cir. 1985)). The burden rests on the plaintiff to establish that the law was clearly established as of the time of the alleged violation. *Id.*  In determining whether a constitutional right is clearly established, we "look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Id.* (quoting *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994).  This

6

analysis invokes a three-step inquiry:

> First, we determine whether based upon the applicable law, the facts viewed in the light most favorable to plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Sallier*, 343 F.3d at 878 (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*))).

    *Sallier* was decided in 2003.  Before it, the Circuit's decision in *Muhammad v. Pitcher*, 35

F.3d 1081 was decided in 1994.  These dates are significant because they help determine when the

law applicable to claims against prison officials for opening incoming attorney mail outside the

prisoner's presence was clearly established.  The *Sallier* decision held that a right to be present

involving specific categories of legal mail was not clearly established as of its decision. However,

it said the following with respect to the qualified immunity analysis of incoming First Amendment

attorney mail claims:

> Attorney mail is, of course, an altogether different story.  We had clearly indicated in *Muhammad* that attorney mail was "legal mail" and that a prisoner is entitled to be present when his attorney mail is opened.  Indeed, the defendants concede, although arguing that the law with regard to "legal mail" is generally unclear, that "the most that can be said is that attorney mail was clearly established as legal mail."

> This analysis brings us to the third step of the qualified immunity: whether Sallier has offered sufficient evidence to indicate that the defendants' actions were objectively unreasonable in light of the clearly established constitutional rights.  In all three claims involving mail from counsel, the defendants listed the letters on the legal mail log as legal mail.  They simply failed to follow established procedures requiring Sallier's presence before the letters were opened.  Such a failure, after recognition of the letters as protected legal mail, is objectively unreasonable, and we conclude that the defendants are not entitled to qualified immunity on these three claims.

> In sum, the defendants are entitled to qualified immunity for Claims O through T because it was not clearly established at the time that mail from the courts was protected legal mail, and the district court erred in holding to the contrary. Accordingly, Claims O through T should not have been submitted to the jury, and the jury verdict on those claims must be vacated. However, the defendants are not entitled to qualified immunity for Claims I, K, and M; those claims were properly submitted to the jury for a determination on the factual question of whether the letters in question were opened by the defendants outside of Sallier's presence. The jury's verdict on Claims I, K, and M is therefore affirmed.

*Sallier*, 343 F.3d at 879-80.

This analysis would seem to forestall further argument because the Court of Appeals recognized that the inmate's rights were clearly established beginning with the decision in *Muhammad* on September 21, 1994. Nevertheless, defense counsel has made an interesting window-period policy argument for the proposition that between May 1, 2002 and April 15, 2005 MDOC officials are entitled to qualified immunity because it was not then obvious to state policy makers that the circumstances of the September 11, 2001 terrorist attacks and the later Anthrax mail incidents did not allow prison officials to open prisoner legal mail from attorneys outside the prisoner's presence. May 1, 2002 is the date which the MDOC began its policy of opening prisoner mail outside of a prisoner's presence. (*See* Def. Tucker's Obj. 2.) April 15, 2005 is the date of Judge Richard Enslen's decision in *Mallory-Bey v. MDOC*, slip op., no. 1:04-CV-137 (W.D. Mich. Apr. 15, 2005), which enjoined the MDOC to cease and desist from the May 1, 2002 policy, effectively ending the policy. This argument is also premised on the notion that the *Sallier* decision was adjudicating conduct arising in 1995 and not later conduct after the September 11, 2001 terrorist attacks.

This window-period argument does coincide with the dates of the incidents involved in this suit. However, defense counsel has only cited limited case support for this proposition, the limited

case support being the Sixth Circuit's decision in *Thompson v. Caruso*, slip op., no. 05-2681 (6th Cir. Oct. 10, 2006). That Sixth Circuit's decision actually reversed a district court decision, *Thompson v. Caruso*, 2005 WL 2156208, 6 (W.D. Mich. 2005) (Chief Judge Bell), which recognized the window-period argument as providing qualified immunity to prison officials. *Thompson v. Caruso*, slip op., no. 05-2681, 3.[4] Nevertheless, defense counsel asserts that the case supports its position because the Court of Appeals recognized that the dividing line between the "clearly established" and not "clearly established" rights was the September 18, 2003 date of decision in *Sallier* rather than the decision-date in *Muhammad*, which was the actual holding of *Sallier*. This *dicta* in *Thompson* did not directly confront the contrary rule in *Sallier* because the purpose of the comment was to overrule the *Thompson* holding as to events after the *Sallier* decision rather than discuss events occurring before the decision in *Sallier*.

Defendant Tucker's argument based on questionable *dicta* in *Thompson* is made even more questionable by a further consideration of the language of the *Mallory-Bey* and *Sallier* decisions. The *Sallier* decision was made during the height of concern about the September 11, 2001 terrorist attacks and the later anthrax mailings. Despite such events, the Sixth Circuit said: "There is no penological interest or security concern that justifies opening such [attorney] mail outside of the prisoner's presence when the prisoner has specifically requested otherwise." *Sallier*, 343 F.3d at 877. This holding was reiterated in *Mallory-Bey*, which said that "Although the issue of the

---

[4]There is one more level of complexity which should be noted for full understanding. The *Thompson* decision was a split decision of two consolidated appeals from the district court. In case no. 05-2681, the case was reversed because Caruso was not entitled to qualified immunity. In case no. 06-1385, the decision was allowed to stand because of technicalities about appellants' failure to file a correct notice of appeal and pay a filing fee in connection with case no. 06-1385. *See Thompson*, slip op., case no. 05-2681/06-1385, at 4 (6th Cir. Oct. 10, 2006).

9

September 11, 20001 attacks was not argued, the Sixth Circuit's Opinion was issued in 2003 and, therefore, the Sixth Circuit was aware of the possibility of heightened security concerns as a result of the September 11, 2001 attacks." *Mallory-Bey*, slip dec., no. 1:04-CV-137, at 3.

Furthermore, Defendant Tucker's argument misunderstands the manner in which precedent becomes established and unestablished in the Sixth Circuit. A published panel decision once made is binding on later panels absent a contrary decision of the Circuit *en banc* or of the United States Supreme Court. Sixth Circuit Rule 206 states in pertinent part: "Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court *en banc* consideration is required to overrule a published opinion of the Court." 6th Cir. R. 206(c) (West Pub. Co. 2008). This rule has been followed extensively in Sixth Circuit precedent. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 298 (6th Cir. 2008); *Spencer v. Bouchard*, 449 F.3d 721, 726 (6th Cir. 2006); *United States v. Jones*, 445 F.3d 865, 873 (6th Cir. 2006); *United States v. Yoon*, 398 F.3d 802, 806-07 (6th Cir. 2005); *United States v. McDaniel*, 398 F.3d 540, 550 (6th Cir. 2005); *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004); *Salmi v. Sec'y of Health & Human Servs.,* 774 F.2d 685, 689 (6th Cir.1985). *See also United States v. Jenkins,* 4 F.3d 1338, 1345 n.8 (6th Cir. 1993) (stating that *dicta* does not compete with panel decisions).

To summarize, the right to prisoner viewing of the opening of incoming attorney mail was clearly established in *Muhammad* and was merely reiterated in *Sallier*. Later *dicta* from an unpublished decision suggesting a different "clearly established" date does not un-ring the bell of

10

binding Sixth Circuit precedent.[5]  Defendant's objection as to qualified immunity fails.

### 2.  Insufficiency of Pleadings

This brings the Court to the second aspect of Defendant's objections.  Defendant Tucker has argued that the surviving claims against her should be limited to the claims involving the two pieces of attorney mail of January 29, 2003 and February 21, 2003.  Defendant contends that the other 50 or so incidences of mail invasion which were only generally alleged by Plaintiff were not sufficiently alleged to provide notice to Defendant.  (Def.'s Obj. 2.)  The Report and Recommendation did not limit Plaintiff's proofs to the two incidences, but rather allowed proofs on some 17 other attorney mailings which Plaintiff identified through specific exhibits.

This argument concerns Federal Rule of Civil Procedure 8(a)(1)(2) and the meaning of the Rule in requiring a "short and plain statement of the claim . . ."  The language of Rule 8, though recently restyled by the Rules Committee, has a long history of liberal interpretation by the Supreme Court and the lower Courts of Appeals.  From the beginning of Rule 8 with its 1937 adoption, the Rule has been understood as requiring only general notice of the transaction and not specific allegations covering all elements of the claim.  5 Wright & Miller, *Federal Practice & Procedure* § 1216 at 208-11 (West 2004 ed.).  This general notice is sufficient to the extent that it provides "fair notice" to defendants.  *Id.*

These principles have been repeatedly reiterated through the years in the context of both colorful and bland cases before the Supreme Court and lower courts.  One of the early cases to

---

[5]It is also noteworthy that *Thompson* was decided on October 10, 2006--long before the effective date (January 1, 2007) of Federal Rule of Appellate Procedure 32.1, which Rule has breathed some life into some unpublished decisions decided after its effective date.

Case 4:05-cv-00090-PLM-ESC   ECF No. 263 filed 09/30/08   PageID.2320   Page 12 of 20


discuss the meaning of Rule 8 was the Second Circuit in *Dioguardi v. Durning*, 139 F.2d 774 (2d Cir. 1944)–a case made important by its interesting fact pattern and because the author of the Opinion, Judge Charles E. Clark, was one of the principal draftsmen of the Federal Rules of Civil Procedure.  The case involved a commercial tonics dealer (Dioguardi) who had sued the Collector of Customs for conversion (lost tonic bottles) and legal violations in conducting an auction; the importer and Dioguardi had a dispute over the payment of the customs charges and the auction was ordered to pay those charges.  The Second Circuit reversed the district court's dismissal of the less-than-artfully-pled suit, saying:

> On defendant's motion for dismissal on the same ground as before, the court made a final judgment dismissing the complaint, and plaintiff now comes to us with increased volubility, if not clarity.

> It would seem, however, that he has stated enough to withstand a mere formal motion, directed only to the face of the complaint, and that here is another instance of judicial haste which in the long run makes waste.  Under the new rules of civil procedure, there is no pleading requirement of stating 'facts sufficient to constitute a cause of action,' but only that there be 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Federal Rules of Civil Procedure, rule 8(a), 28 U.S.C.A. following section 723c; and the motion for dismissal under Rule 12(b) is for failure to state 'a claim upon which relief can be granted.'  The District Court does not state why it concluded that the complaints showed no claim upon which relief could be granted; and the United States Attorney's brief before us does not help us, for it is limited to the prognostication - unfortunately ill founded so far as we are concerned - that 'the most cursory examination' of them will show the correctness of the District Court's action.

> We think that, however inartistically they may be stated, the plaintiff has disclosed his claims that the collector has converted or otherwise done away with two of his cases of medicinal tonics and has sold the rest in a manner incompatible with the public auction he had announced . . . .  Of course, defendant did not need to move on the complaint alone; he could have disclosed the facts from his point of view, in advance of a trial if he chose, by asking for a pre-trial hearing or by moving for a summary judgment with supporting affidavits.  But, as it stands, we do not see how the plaintiff may properly be deprived of his day in court to show what he obviously

so firmly believes and what for present purposes defendant must be taken as admitting.

*Dioguardi*, 139 F.2d at 775.

This same basic understanding of Rule 8 has often been reiterated through the years by both the Supreme Court and the Sixth Circuit Court of Appeals.  In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), the Supreme Court reviewed a dismissal of a Fourth Amendment complaint based on "heightened pleading requirements" for claims against municipalities.  Chief Justice Rehnquist, writing for the Court, promptly whisked away those heightened pleading requirements as inconsistent with Rule 8(a).

> We think that it is impossible to square the "heightened pleading standard" applied by the Fifth Circuit in this case with the liberal system of "notice pleading" set up by the Federal Rules.  Rule 8(a)(2) requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Conley v. Gibson,* 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), we said in effect that the Rule meant what it said:
>
>> "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Id.,* at 47, 78 S. Ct., at 103 (footnote omitted).
>
> Rule 9(b) does impose a particularity requirement in two specific instances. It provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Thus, the Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983. *Expressio unius est exclusio alterius.*

*Leatherman*, 507 U.S. at 168.

Likewise, the Supreme Court in 2002 beat back an attempt by the Second Circuit to require employees to specifically plead a *prima facie* case under the *McDonnell Douglas* standards as a pre-condition to suit.[6]  Justice Thomas, writing for the Court, said:

> Respondent argues that allowing lawsuits based on conclusory allegations of discrimination to go forward will burden the courts and encourage disgruntled employees to bring unsubstantiated suits. . . .  Whatever the practical merits of this argument, the Federal Rules do not contain a heightened pleading standard for employment discrimination suits.  A requirement of greater specificity for particular claims is a result that "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation."  *Leatherman, supra,* at 168, 113 S. Ct. 1160. Furthermore, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits.  "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  *Scheuer [v. Rhodes]*, 416 U.S. [232], at 236, 94 S. Ct. 1683 [(1974)].

> For the foregoing reasons, we hold that an employment discrimination plaintiff need not plead a prima facie case of discrimination and that petitioner's complaint is sufficient to survive respondent's motion to dismiss.  Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-15 (2002).

Such rulings are binding upon this Circuit and have been followed extensively.  *See, e.g.,* *Lindsay v. Yates*, 498 F.3d 434, 440 (6th Cir. 2007); *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 577 (6th Cir. 2004); *Memphis, Tenn. Area Loc., Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). Pleadings drafted by a *pro se* party are held to even a less stringent standard, given the liberal policy of the Federal Rules of Civil Procedure and the interest in promoting the resolution of disputes on their merits.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hahn v. Star Bank*, 190 F.3d 708,

---

[6]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

715 (6th Cir. 1999).

In this instance, Defendant Tucker concedes that Plaintiff has provided specific allegations as to the January 29, 2003 and February 21, 2003 correspondence, but not as to the other rejected mail.  (*See* Def.'s Obj. 2.)  This Court agrees with Magistrate Judge Carmody's analysis that Plaintiff's general allegations that Defendant Tucker opened other attorney mail outside his presence, coupled with his exhibits listing specific attorney letters, is sufficient in light of the pleading requirements of Rule 8.  This is especially so because Rule 8(e) requires that pleadings be construed to do justice.  There would be nothing just about dismissing other allegations as facially insufficient when the cause of the facial insufficiency was the defense's failure to comply with the legal responsibilities under Rule 26 to maintain for discovery purposes in an accessible fashion the legal mail logs which Defendant Tucker was required to use under MDOC policy.  As such, all of Defendant Tucker's Objections are denied.  Notwithstanding, the Court makes no judgment as to whether the future trial record concerning the additional exhibits will be sufficient to support relief.  That question is reserved for another day.

## B.  Plaintiff Wappler's Objections

### 1.  Rule 56(f) Motion/Affidavit

Plaintiff objects to the Magistrate Judge's failure to expressly consider his Rule 56(f) Affidavit, which requested that determination of Defendants' Motion for Summary Judgment be reserved while he sought additional discovery from other employees of the MDOC.  In particular, Plaintiff sought this delay in order to remedy the discovery withheld from him as a result of the loss of the mail logs and related records.  (Pl.'s Obj. 2; Pl.'s Rule 56(f) Aff. 2-7.)

Review of the Report and Recommendation indicates that Magistrate Judge Carmody rejected the Motion to Hold Defendant's Dispositive Motion in Abeyance as moot because she had separately granted an extension of time for Plaintiff to file supplemental Objections.  (*See* Report 32.)  This was not opportune in that federal standards governing mootness are exacting:

> A case becomes moot " 'when the issues presented are no longer 'live' or parties lack a legally cognizable interest in the outcome.' " *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969)).  In other words, a case becomes moot only when subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* The heavy burden of demonstrating mootness rests on the party claiming mootness. *Id.*

*Cleveland Branch, N.A.A.C.P. v. City of Parma*, *OH*, 263 F.3d 513, 530-31 (6th Cir. 2001). Likewise, a claim for relief only becomes moot when the litigant receives the relief he seeks or when it is factually, but not necessarily legally, impossible to receive such relief.  *See Liberles v. County of Cook,* 709 F.2d 1122, 1127 (7th Cir. 1983) (citing 13 Wright, Miller & Cooper, *Federal Practice & Procedure* § 3533 at 263 (1975) (Supp. 1979)); *In re DSC, Ltd.*, 486 F.3d 940, 945-46 (6th Cir. 2007) (following *Liberles*).

In this case, the Rule 56(f) Affidavit and Motion to Hold Dispositive Motion in Abeyance were not technically moot because those requests sought different and separate relief from the extension motion which was granted.  Nevertheless, the denial of the Motion and Rule 56(f) Affidavit did nothing to impair Plaintiff's legal rights with respect to the surviving claims against Defendant Tucker because the Motion for Summary Judgment was denied as to those claims.  As to other legal claims which the Magistrate Judge has recommended dismissal, Plaintiff has had an adequate opportunity for discovery and a blind fishing expedition hoping that witnesses will find

16

long-lost documents or remember details from papers not seen in many years is wholly futile. *See First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 298-99 (1968) (affirming denial of Rule 56(f) where plaintiff had extensive discovery and further discovery would be futile); *Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133, 138 (6th Cir. 1993) (denying 56(f) motion when "additional discovery was not necessary"); *see also Glen Eden Hosp., Inc. v. Blue Cross & Blue Shield of Mich., Inc.*, 740 F.2d 423, 428 (6th Cir. 1984) (noting that allowance of additional discovery under Rule 56(f) is discretionary).[7]

Accordingly, this Objection is denied.

**2. Citation to Unpublished Decisions Without Notice**

Plaintiff has also objected to the Magistrate Judge's citation to some 18 unpublished decisions without providing the prisoner a copy to review. Those decisions are not typically available in prison law libraries, which lack access to electronic citation formats.

This Court has reviewed the 18 unpublished decisions referenced in the Report and Recommendation, and finds that the great majority of them were cited as supplemental authority and are not necessary for the decision. As to those citations, the Court does not rely upon them and rather relies upon the other published authorities cited in the Report and Recommendation. However, the Court does recognize that the following citations are significant in terms of the legal justification provided in the Report and Recommendation: *Karkoukli's, Inc. v. Walgreen Co.*, 2004 WL 435384 (Mich. Ct. App. Mar. 9, 2004) (cited on page 10 of the Report); *Desmone v. Adams*,

---

[7]Plaintiff also argues that Defendant has a continuing duty under Rule 26(e) to supplement discovery responses. This is true, though it is far from clear that there is any supplemental discovery information in Defendant's possession or control which falls within the ambit of Rule 26(e).

1998 WL 702342 (6th Cir. Sept. 23, 1998) (cited on page 13 of the Report); *Brown v. Gerth*, 2007 WL 2480526 (W.D. Mich. June 6, 2007) (cited on page 13 of the Report); *Jackson v. Madery*, 158 Fed. Appx. 656, 660 (6th Cir. May 30, 2006) (cited on page 14 of the Report); and *Braithwaite v. Rispoli*, 2007 WL 1795880 (D. Del. June 21, 2007) (cited on page 33 or the Report).

To avoid reliance upon unpublished authorities, the Court cites the following published authorities in place of the authorities cited:  *Early Detection Ctr., PC v. New York Life Ins. Co.,* 403 N.W.2d 830, 836 (Mich. Ct. App. 1986) in place of *Karkoukli's, Inc.*; *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) and *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) in place of *Desmone*; *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985) and *Forsberg v. Pacific Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988) in place of *Brown*; *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999) (*en banc*) in place of *Jackson*; and *In re Richard,* 914 F.2d 1526, 1527 (6th Cir. 1990) and *Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993) in place of *Braithwaithe*. Having so modified the Report, there is no longer reliance upon any unpublished opinion for the substance of the Court's ruling.[8]

To this extent, Plaintiff's Objection is granted in part and denied in part.[9]

### 4. Ignoring Portions of the Record and Other Objections

Plaintiff claims that the Magistrate Judge ignored portions of the Record, including the

---

[8]Though the Court does not invite one, it will entertain any timely motion for reconsideration under W.D. Mich. L. Civ. R. 7.4 caused by the amendment of the authorities supporting the decision.

[9]As to two of the "unpublished" citations--*U.S. ex rel. Bledsoe v. Community Health Systems*, *Inc.*, – F.3d – , 2007 WL 2492439 (6th Cir. 2007) and *See v. City of Elyria,* – F.3d –, 2007 WL 2710829 (6th Cir. 2007), those citations are now available as published Sixth Circuit decisions at 501 F.3d 493 and 502 F.3d 484, respectively.

Affidavit in Opposition to Defendant Brevard's Motion for Summary Judgment and the Affidavit in Opposition to Defendant Mikkelsen's Motion for Summary Judgment.  While it is true that the Magistrate Judge has not commented on every Affidavit prepared by Plaintiff nor commented on every frivolous argument and claim raised, it does appear that the 34-page Report and Recommendation adequately considered the record and made proper dispositions as to the claims properly asserted.

Plaintiff's Affidavit regarding Defendant Mikkelsen largely addressed the failure of Mikkelsen to conduct a formal grievance hearing in compliance with state regulation, which the Magistrate Judge assumed was true on page 32 of the Report.  Plaintiff's argument about Mikkelsen's denial of due process was rejected nevertheless because the record indicates that Plaintiff's protest statement was considered and did provide Plaintiff with an adequate "opportunity to be heard" as to the handling of the January 23, 2003 mailing.  *See Procunier v. Martinez*, 416 U.S. 396, 417 (1974) (stating that the "opportunity to be heard" is sufficient as long as the plaintiff has an opportunity to protest and appeal the rejection to a neutral decision-maker); *Martin v. Kelley*, 803 F.2d 236, 243 (6th Cir. 1986) (same).  An errant decision by itself does not amount to a deprivation of due process. *Martinez v. State of Cal*., 444 U.S. 277, 284 n.9 (1980).   In this respect, Plaintiff's right to be heard was not violated whether or not accompanied by an in-person formal hearing.

Similarly, Plaintiff's arguments about his Affidavit regarding Defendant Brevard does not warrant different treatment.  Notwithstanding Plaintiff's conclusory allegations, the record does not support a retaliation claim against Defendant Brevard because placing Plaintiff on modified grievance access does not amount to "retaliation" as a matter of law.  (*See* R & R at 14.)  Plaintiff's many other arguments about his contrary understanding of the record and his legal claims were

19

sufficiently answered by the Report and Recommendation.[10]  The Court overrules those Objections

for the reasons given in the Report as supplemented herein.

**<u>CONCLUSION</u>**

In accordance with this Opinion, a Partial Judgment and Order shall enter denying Defendant

Tucker's Objections, granting in part and denying in part Plaintiff's Objections, and disposing of

the parties' Motions as recommended by the Magistrate Judge.  The Report and Recommendation

will be approved as amended herein.


Dated:   September 30, 2008                                  /s/ Paul L. Maloney
                                                             PAUL L. MALONEY
                                                             Chief United State District Judge

---

[10]One final matter warranting brief comment is Plaintiff's argument as to his exhibit F-3, a letter to a court which was opened outside his presence.  (*See* Pl.'s Suppl. Obj. 5-6.)  Although the Magistrate Judge did not identify the exhibit as a letter to a court, the Plaintiff's identification of it as such means that any First Amendment claim against Defendant Tucker regarding exhibit F-3 (given the timing of the letter during Plaintiff's incarceration at MCF) qualifies the claim for qualified immunity treatment under *Sallier*.  *See Sallier*, 343 F.3d at 879 (stating that legal mail right as to court correspondence was not clearly established prior to the *Sallier* decision).